UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LISA R.,

          Plaintiff,

   v.

COMMISSIONER OF SOCIAL
SECURITY,

          Defendant.

CASE NO. 3:22-CV-5296-DWC

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of Defendant's denial of Plaintiff's application for disability insurance ("DIB") and supplemental security income ("SSI"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 2.

After considering the record, the Court concludes the ALJ erred in discounting the medical opinions of Dr. Lazio, Dr. Gibson, and the Disability Determination Services ("DDS") physicians. Accordingly, this matter is reversed and remanded pursuant to sentence four of 42

U.S.C. § 405(g) to the Social Security Commissioner ("Commissioner") for further proceedings consistent with this Order.

## FACTUAL AND PROCEDURAL HISTORY

On February 27, 2018, Plaintiff filed for DIB and SI, alleging disability as June 29, 2011. *See* Dkt. 10; Administrative Record ("AR") 120, 135, 148, 161, 402-11. The applications were denied upon initial administrative review and on reconsideration. *See* AR 133, 145, 159, 175.

ALJ Malcolm Ross held a hearing on April 29, 2020 and issued a decision on June 25, 2021 finding Plaintiff not disabled. AR 12-29, 91-117. On September 18, 2020, the Appeals Council remanded the case back to the ALJ. AR 200-03.

ALJ Ross held a second hearing and issued a second decision on June 30, 2021, again finding Plaintiff not disabled. AR 12-90. The Appeals Council denied Plaintiff's request to review the ALJ's decision, making the ALJ's June 2021 decision the final decision of the Commissioner. *See* AR 1-6; 20 C.F.R. §§ 404.981, 416.1481.

In Plaintiff's Opening Brief, Plaintiff contends the ALJ erred in: (1) evaluating medical opinion evidence, and (2) evaluating her symptom testimony. Dkt. 10, p. 1.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

///

///

///

<u>DISCUSSION</u>

**I.    Whether the ALJ Properly Evaluated Medical Opinion Evidence**

Plaintiff contends the ALJ erred in evaluating the medical opinions of: (1) Dr. Melinda Losee, (2) Dr. Barbara Lazio, (3) Dr. Philip Gibson, (4) Ms. Crystal Wilmot, ARNP, and (5) the DDS physicians. Dkt. 10, pp. 3-14.

Plaintiff submitted her applications after March 27, 2017. AR 120, 135, 148, 161. Under the applicable rules, the ALJ must "articulate how [he] considered the medical opinions" and "how persuasive [he] find[s] all of the medical opinions" by considering their supportability, consistency, and other factors. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). The ALJ is specifically required to consider the two most important factors, supportability and consistency. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The supportability factor requires the ALJ to consider the relevance of the objective medical evidence and the supporting explanations presented by the medical source to justify their opinion. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The consistency factor involves consideration of how consistent a medical opinion is with the other record evidence. 20 C.F.R. §§ 404.1520c(c)(2); 416.920c(c)(2). Further, under the new regulations, "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792.

1.    Dr. Losee

Dr. Melinda Losee completed a psychological evaluation of Plaintiff in October 2019 by reviewing Plaintiff's record and conducting a clinical interview, mental status exam, and intelligence and memory tests. AR 1273-78. Dr. Losee opined Plaintiff's ability to maintain attention and concentration for extended periods of time is "impaired," Plaintiff has an "impairment" in her ability to remember detailed verbally and/or visually presented directions,"

1   her "pace (e.g. processing speed) is significantly impaired," and her "ability to handle normal

2   work pressures on a full-time basis at present is impaired." *See* AR 1278. Dr. Losee also

3   completed a medical source statement on November 8, 2019 and opined that Plaintiff is

4   markedly limited with understanding, remembering, and carrying out complex instructions. *See*

5   AR 1279.

6          Plaintiff contends the ALJ erred because despite finding Dr. Losee's opinion

7   "persuasive," the RFC does not address Dr. Losee's opinion that she is "impaired" in her ability

8   to handle normal work pressures on full-time. *See* Dkt. 10, p.5; AR 29.

9          "[T]he ALJ is responsible for translating and incorporating clinical findings into a

10  succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). Here,

11  the ALJ explained the RFC addresses Dr. Losee's October 2019 findings that Plaintiff is

12  "impaired" in several areas. *See* AR 29. In pertinent part, the ALJ assessed Plaintiff has the RFC

13  to perform light work, though "[h]er work should be limited to simple tasks consistent with SVP

14  2 or less work that can be learned in 30 days or less; with no conveyor belt-paced production

15  requirements; where stand work breaks are provided; working in a low stress-environment with

16  only occasional, routine workplace changes." AR 22. Though Plaintiff's RFC does not explicitly

17  restate Dr. Losee's findings, verbatim, the ALJ's decision to limit Plaintiff to a "low-stress

18  environment" nonetheless reflects Dr. Losee's opinion about Plaintiff's impairment when it

19  comes to handling work pressure. *See* AR 21-22. Thus, Plaintiff's argument that the ALJ erred in

20  incorporating Dr. Losee's opinion fails. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-75

21  (9th Cir. 2008) (the RFC need not be identical so long as it is consistent, with the medical

22  opinion credited by the ALJ).

23

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 4

1    Plaintiff also contends the ALJ erred in discounting Dr. Losee's finding that her ability to

2    handle normal work pressure on a full-time basis is "impaired." Dkt. 10, pp. 5-9. But again, the

3    ALJ properly incorporated this limitation into Plaintiff's RFC and did not discount it. Further,

4    when an ALJ's RFC assessment accounts for opined limitations from a medical source, there can

5    be no harmful error. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010).

6    Even assuming the ALJ discounted this portion of Dr. Losee's opinion for erroneous reasons,

7    such errors would be harmless because this limitation was accounted for in Plaintiff's RFC.

8    Thus, this argument also fails.

9    2.   Dr. Lazio

10    Dr. Barbara E. Lazio provided a letter to Plaintiff's counsel on August 17, 2020, which

11    stated that she reviewed Dr. Losee's October 2019 opinion and that she agreed that Plaintiff's

12    "cognitive limitations would impair her ability to work effectively and apart [sic] her full-time

13    capacity." AR 1338. The ALJ discounted Dr. Lazio's opinion because (1) Dr. Lazio did not have

14    a "correct interpretation of Dr. Losee's opinion," and (2) Dr. Lazio's opinion was not supported

15    with "any objective facts or details." AR 30.

16    With regard to the ALJ's first reason, the Court disagrees that Dr. Lazio misinterpreted

17    Dr. Losee's opinion. Dr. Lazio described Dr. Losee's opinion as follows: "patient to be quite

18    limited in her attention and concentration as well as her visual memory." *See* AR 1338. This

19    description does not conflict with Dr. Losee's actual findings about how Plaintiff's "ability to

20    maintain attention and concentration for extended periods of time" and "ability to remember

21    detailed verbally and/or visually presented directions" are impaired. *Compare* AR 1338 *with* AR

22    1278. Dr. Lazio's interpretation is consistent with Dr. Losee's actual findings, therefore the ALJ

23

24

1   erred in discounting Dr. Lazio's opinion on the basis that Dr. Lazio misinterpreted Dr. Losee's

2   opinion.

3          With regard to the ALJ's second reason, under the new regulations, a medical opinion's

4   supportability is measured by the objective medical evidence and supporting explanation

5   provided by the medical source providing that opinion. *See* 20 C.F.R. §§ 404.1520c(c)(1),

6   416.920c(c)(1). Here, Dr. Lazio's letter included no objective findings of her own and simply

7   states she has seen Plaintiff for meningioma and Plaintiff is diagnosed of multiple sclerosis

8   ("MS"). *See* AR 1338. However, the record shows Plaintiff emailed Dr. Lazio on May 8, 2019

9   about the causes of her "extreme fatigue," and Dr. Lazio responded on May 13, 2019 that her

10  symptoms "may be related to the changes in the frontal lobes." *See* AR 1100. Plaintiff also had

11  an appointment with Dr. Lazio on May 16, 2019, where Dr. Lazio reviewed Plaintiff's MRI, and

12  assessed that Plaintiff is "likely to have some residual fatigue and emotional liability based on

13  the size of the tumor," and that this is "compounded by the fact that she is has multiple

14  sclerosis." AR 1245-48.

15         These treatment notes are exactly the type of "objective medical evidence" the ALJ must

16  consider when evaluating a medical opinion's supportability. *See* 20 C.F.R. §§ 404.1502(f)

17  ("Objective medical evidence means signs, laboratory findings, or both."), 416.913(a)(1) (same).

18  Furthermore, considering Dr. Lazio had examined Plaintiff prior to the August 2020 letter, it

19  would not be unreasonable to assume that Dr. Lazio's opinion was based on her own assessment

20  and understanding of Plaintiff's impairments. Because the ALJ did not consider the rest of Dr.

21  Lazio's treatment notes, the Court cannot say the ALJ sufficiently addressed the supportability of

22  Dr. Lazio's opinion. *See also Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014) (holding

23

24

1   that an ALJ errs in rejecting a physician's unsupported "check-box" opinion when that opinion is

2   based on a physician's "significant experience" with claimant and is supported by other records).

3          By failing to provide at least one legally sufficient reason for discounting Dr. Lazio's

4   opinion, the Court finds the ALJ erred.  "[H]armless error principles apply in the Social Security

5   context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless, however,

6   only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate

7   nondisability determination." *Stout v. Commissioner, Social Security Admin.*, 454 F.3d 1050,

8   1055 (9th Cir. 2006); *see Molina*, 674 F.3d at 1115. The determination as to whether an error is

9   harmless requires a "case-specific application of judgment" by the reviewing court, based on an

10  examination of the record made "'without regard to errors' that do not affect the parties'

11  'substantial rights.'" *Molina*, 674 F.3d at 1118-1119 (quoting *Shinseki v. Sanders*, 556 U.S. 396,

12  407 (2009)). In this case, the ALJ's error was not harmless. Had the ALJ properly evaluated Dr.

13  Lazio's opinion, the ALJ may have incorporated Dr. Lazio's opined limitations into Plaintiff's

14  RFC and thus change the ALJ's decision that Plaintiff was not disabled. As the ultimate

15  disability determination may have changed, the ALJ's error is not harmless and requires reversal.

16         3.   Dr. Gibson

17         On July 8, 2018, Dr. Philip Gibson completed a mental evaluation of Plaintiff by

18  reviewing Plaintiff's records and conducting a mental status examination. AR 1049-52. Dr.

19  Gibson opined that Plaintiff would have difficulty maintaining regular attendance and

20  completing a normal workday/workweek without interruptions from a psychiatric condition, and

21  dealing with the usual stress encountered in the workplace. AR 1052.

22

23

24

Plaintiff contends the ALJ erred because despite finding Dr. Gibson's opinion persuasive, the RFC fails to incorporate Dr. Gibson's opinion about Plaintiff's difficulty with maintaining regular attendance and dealing with the usual stress encountered at work. Dkt. 10, p. 11.

In pertinent part, the ALJ assessed Plaintiff has the RFC to perform light work, though "[h]er work should be limited to simple tasks consistent with SVP 2 or less work that can be learned in 30 days or less; with no conveyor belt-paced production requirements; where stand work breaks are provided; working in a low stress-environment with only occasional, routine workplace changes." AR 22. The ALJ explained Dr. Gibson's findings are accounted for in Plaintiff's RFC by limiting her to low stress work, and limiting the pace, frequency, and complexity of any changes in her work routine. *See* AR 29.

The Court finds the RFC reasonably accounts for Dr. Gibson's opinion regarding Plaintiff's difficulty with dealing with stress encountered at work. As previously discussed, when an ALJ's RFC finding accounts for the opined limitations from a medical source, there can be no harmful error. *See Turner*, 613 F.3d at 1223. Here, the ALJ here reasonably "translated" Plaintiff's difficulty dealing with stress by assessing an RFC that limits the pace, stress, and frequency and complexity of the changes in Plaintiff's work environment. *See Rounds*, 807 F.3d at 1006. Thus, the ALJ did not err with this portion of Dr. Gibson's opinion.

However, the ALJ did err by failing to incorporate the rest of Dr. Gibson's opinion. Where an ALJ accords substantial or great weight to a physician's opinion, he must either incorporate their findings into the RFC or offer an explanation for why he chose not to accept them. *See Betts v. Colvin*, 531 Fed. Appx. 799, 800 (9th Cir. 2013) (finding the ALJ committed reversible error by purporting to give great weight to an examining physician, yet failing to include many of the physician's opined limitations in the RFC). While the RFC here adequately

1  addresses the demands in a workplace, it is silent as to Dr. Gibson's opinion that Plaintiff would

2  have difficulty with maintaining regular attendance. *See* AR 1052. The ALJ's failure

3  to incorporate this limitation into the RFC finding renders the ALJ's RFC finding incomplete and

4  unsupported by substantial evidence, therefore the ALJ erred. *See Hill v. Astrue*, 698 F.3d 1153,

5  1162 (9th Cir. 2012).

6        To the extent that the ALJ discounted this portion of Dr. Gibson's opinion because

7  greater limitations than those in the RFC "are not warranted by [Plaintiff's] longitudinal mental

8  status examinations," the Court finds the ALJ erred here as well. *See* AR 29. The ALJ does not

9  specifically cite the mental status examinations he refers to, but elsewhere in his decision, the

10  ALJ discussed how Plaintiff's cognition was found intact, how she was generally found

11  cooperative and with pleasant affect. *See* AR 27 (citing AR 1276, 618, 627, 633, 1040, 1050,

12  1091, 1097, 1266, 1268, 1270, 1288, 1295, 1525, 1527, 1585, 1596-97).

13        Under the new regulations, the ALJ measures a persuasiveness of a medical opinion by

14  considering how consistent that medical opinion is with the evidence from other medical sources

15  and nonmedical sources in the claim. *See* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). Here,

16  the ALJ fails to explain how Plaintiff's cognition and her generally normal presentations during

17  her appointments undermine Dr. Gibson's opinion that Plaintiff would have difficulty with

18  maintaining regular attendance. Without further explanation, supported by substantial evidence,

19  as to how Dr. Gibson's opinion is inconsistent with Plaintiff's generally cooperative and pleasant

20  demeanor during her appointments, the Court cannot confidently say the ALJ properly

21  discounted Dr. Gibson's opinion and finds the ALJ erred.

22        The ALJ's errors here are not harmless. As previously stated, an error is harmless only if

23  it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability

24

1   determination." *Stout*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see Molina*, 674 F.3d at 1115. In this

2   case, had the ALJ properly evaluated Dr. Gibson's opinion, the ALJ may have found Plaintiff

3   disabled or included additional limitations in her RFC. Accordingly, the ALJ's errors are not

4   harmless and require reversal.

5         4.   Ms. Wilmot, ARNP

6         Crystal Wilmot, ARNP, completed a questionnaire prepared by Plaintiff's counsel on

7   August 20, 2019 regarding Plaintiff's fatigue. AR 1249-50. In the questionnaire, Ms. Wilmot

8   indicated that: Plaintiff's severe fatigue would likely reduce productivity by greater than 20

9   percent in an eight-hour workday, Plaintiff would be limited to standing/walking for less than

10  two hours and limited to sitting for less than three hours, and that Plaintiff's fatigue, MS, and

11  trouble with concentration would likely cause her to miss at least three full days of work per

12  month. *Id*.

13        The ALJ discounted Ms. Wilmot's opinion because it (1) provided "little explanation in

14  terms of objective findings or other basis," (2) is inconsistent with Plaintiff's physical exams,

15  and (3) inconsistent with her ability to travel and perform activities of daily living. AR 29.

16        With regard to the ALJ's first reason, a medical opinion's supportability is measured by

17  the objective medical evidence and supporting explanation provided by the medical source

18  providing that opinion. *See* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). While the ALJ

19  correctly points out the questionnaire lacked any objective medical evidence that would lend to

20  the supportability of Ms. Wilmot's opinion, the ALJ improperly disregarded other objective

21  medical evidence from when Ms. Wilmot examined and assessed Plaintiff throughout the

22  relevant period.

23

24

1    Ms. Wilmot first saw Plaintiff on January 10, 2018 after being referred by Dr. Lazio. AR

2    989. Plaintiff continued to follow up with Ms. Wilmot two other times in January 2018, as well

3    as in April, May 2018, and again in April and October 2019. *See* AR 994- 1007, 1046-48, 1072-

4    76, 1284-95. Ms. Wilmot's treatment notes from these appointments show Plaintiff was positive

5    for tiredness, overall body pain and balance problems, and her record was suggestive of MS.

6    Again, these treatment notes are exactly the type of "objective medical evidence" the ALJ

7    must consider when evaluating a medical opinion's supportability. *See* 20 C.F.R. §§ 404.1502(f)

8    ("Objective medical evidence means signs, laboratory findings, or both."), 416.913(a)(1) (same).

9    These notes were also from Plaintiff's appointments before Ms. Wilmot completed the

10   questionnaire, therefore it would not be unreasonable that Ms. Wilmot formed the bases for her

11   opinions expressed in the questionnaire assessment. *See also Garrison*, 759 F.3d at 1013

12   (holding that an ALJ errs in rejecting a physician's unsupported "check-box" opinion when that

13   opinion is based on a physician's "significant experience" with claimant and is supported by

14   other records). Because the ALJ did not discuss Ms. Wilmot's longitudinal findings, the Court

15   finds the ALJ erred in discounting her opinion for its lack of supportability.

16   With regard to the ALJ's second reason, the ALJ measures a persuasiveness of a medical

17   opinion by considering how consistent that medical opinion is with the evidence from other

18   medical sources and nonmedical sources in the claim. *See* 20 C.F.R. §§ 404.1520c(c)(2),

19   416.920c(c)(2). Here, the ALJ pointed out Plaintiff's physical exams "have routinely found her

20   with normal strength, range of motion and gait." AR 29. But as discussed, Plaintiff's record,

21   including Ms. Wilmot's own treatment notes, shows she was continuously found positive for

22   fatigue and overall body pain, therefore the ALJ's finding is not supported by substantial

23

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 11

1  evidence. *See* AR 1073-74, 1148, 1288, 1295, 1246-47, 1648. In discounting Ms. Wilmot's

2  opinion for its inconsistency with the record, the ALJ erred.

3       With regard to the ALJ's third reason, a medical opinion can be undermined with a

4  claimant's reported activities if supported by substantial evidence. *Ford*, 950 F.3d at 1155. Here,

5  the ALJ specifically cites Plaintiff's ability to frequently travel, garden, work, and drive. AR 29.

6  The record shows Plaintiff frequently planned trips and vacationed to several places throughout

7  the relevant period, including Mexico, Hawaii, and Lake Cushman. AR 606, 672, 1242, 1307,

8  1546, 1562. The record also shows Plaintiff traveled at least four times in 2020 and had planned

9  to go Las Vegas and the Grand Canyon for "outdoor adventures," though this trip was canceled

10  because of COVID-19. *See* AR 1307, 1523, 1526, 1545, 1569-70. The record also shows

11  Plaintiff is able to drive herself and her son, she engages in gardening and yard work, and has

12  worked part-time work in her family's farm, her friend's company, and her friend's house. AR

13  622, 626, 643, 662, 692, 702, 1298, 1523, 1562, 1581, 1599. While Plaintiff correctly points out

14  that a claimant does not need to be "utterly incapacitated" to be eligible for disability benefits,

15  "when the evidence is susceptible to more than one rational interpretation, [the Court] must

16  uphold the ALJ's findings if they are supported by inferences reasonably drawn from the

17  record." *See Molina*, 674 F.3d at 1111; *see also Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th

18  Cir. 2022) (finding the ALJ did not err in discounting claimant's testimony based on her daily

19  activities, including vacationing). Considering Plaintiff's ability to engage in these activities, the

20  ALJ could reasonably discount Ms. Wilmot's opinion, thus the Court cannot say the ALJ erred.

21       And because the ALJ has provided at least one valid reason to discount Ms. Wilmot's

22  opinion, the two other reasons offered by the ALJ which the Court found erroneous are rendered

23  harmless. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 12

1   (including an erroneous reason is at most harmless error where an ALJ provides other reasons

2   that are supported by substantial evidence).

3       5.   DDS Physicians

4       Plaintiff also contends the ALJ erred in finding the opinions of DDS physicians

5   persuasive because (1) they "did not have access to significant probative evidence prior to

6   forming their opined limitations," and (2) they are inconsistent with the other medical opinions

7   in the record. Dkt. 10, p. 14; AR 28, 120-45, 148-76.

8       With regard to the first reason, under the new regulations, the ALJ may consider evidence

9   showing whether "a medical source has familiarity with the other evidence in the claim." 20

10  C.F.R. §§ 404.1520c(c)(5), 416.920c(c)(5). However, this is neither the sole nor determinative

11  factor the ALJ must consider, especially since the regulations make clear that an opinion's

12  supportability and consistency are the most important factors. *See* 20 C.F.R. §§ 20 C.F.R. §§

13  404.1520c(b)(2), 416.920c(b)(2).

14      With regard to the second reason, the consistency factor involves consideration of how

15  consistent a medical opinion is with the other record evidence. 20 C.F.R. §§ 404.1520c(c)(2);

16  416.920c(c)(2). Here, the ALJ found that the DDS physicians' medical opinions were

17  "substantially consistent with the evidence as a whole." AR 28. But the Court has found that the

18  ALJ erred in evaluating the medical opinions of Dr. Lazio and Dr. Gibson, therefore the ALJ's

19  evaluation of the DDS physicians' opinions are not supported by substantial evidence.

20  **II.    Whether the ALJ Properly Evaluated Plaintiff's Symptom Testimony**

21      Plaintiff testified that since undergoing surgery for a brain tumor in June 2011, she

22  experiences physical and mental fatigue. AR 57, 64, 102. Plaintiff stated that due to her fatigue,

23  she has to pace herself and tries to do things sitting down because it takes more energy for her to

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 13

do things when standing up. AR 58. Plaintiff testified that due to her MS, her fatigue worsened, she has issues with balance and depth perception, and has weakness in her hands. AR 58, 103, 111. Plaintiff testified she started taking new medication for her MS, which have led to side effects including joint pain, muscle pain, and vertigo. AR 50-52. Plaintiff also testified to having insomnia, and COPD. AR 54, 58, 104. As for her mental health, Plaintiff testified to having anxiety. AR 58, 112-13.

Regarding her daily activities, Plaintiff explained she drives as little as possible, she no longer cooks for her family, she typically stays at home and watches television, and when she is able to perform household chores, she can only do so in increments for a total of two hours throughout the day. AR 103-04, 106. Plaintiff also testified that since her 2020 hearing, she mostly stays at home and has been limited in traveling. AR 57. Plaintiff explained that because traveling tires her out, she sits, naps, and refrains from doing anything strenuous when she gets to her destination. AR 71-72.

When asked about her work history prior to the pandemic, Plaintiff explained that she used to answer phones at a friend's business from half an hour to three and a half hours every week. AR 54-55, 65. AR 54-55. Plaintiff stated she stopped doing this after the pandemic, and now housesits for a friend by getting the mail, watering her plants, and overseeing any yard work being done. AR 54, 66-67. Plaintiff also testified that once a month. every three weeks, for about two years, she would come to her friend's house to do laundry. AR 70-71. Plaintiff also testified she used to work in her family's farm every weekend during the summer, but explained that her "work" consisted of sitting in a chair and spraying dirt off of vegetables with a hose. AR 69-70. Finally, when asked about her use of marijuana, Plaintiff explained that she uses it recreationally once or twice a month. AR 60-61.

1    The ALJ found that while Plaintiff's medically determinable impairments "could

2    reasonably be expected to cause" Plaintiff's alleged symptoms, Plaintiff's statements

3    "concerning the intensity, persistence and limiting effects of these symptoms are not entirely

4    consistent with the medical evidence and other evidence in the record." AR 23. Specifically, the

5    ALJ discounted Plaintiff's testimony because of its inconsistencies (1) with Plaintiff's own

6    statements, (2) with the objective medical evidence, and (3) with plaintiff's daily activities. AR

7    23-28.

8    If an ALJ rejects the testimony of a claimant once an underlying impairment has been

9    established, the ALJ must support the rejection "by offering specific, clear and convincing

10   reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (citing *Dodrill v.*

11   *Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th

12   Cir. 1998) (citing *Bunnell v. Sullivan*, 947 F.2d 343, 346-47 (9th Cir. 1991)). As with all of the

13   findings by the ALJ, the specific, clear and convincing reasons also must be supported by

14   substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *see also Bayliss*, 427 F.3d at

15   1214 n.1 (citing *Tidwell*, 161 F.3d at 601).

16   With regard to the ALJ's first reason, an ALJ may consider inconsistencies either in the

17   claimant's testimony or between the testimony and the claimant's conduct. *See Molina*, 674 F.3d

18   at 1112.  Here, the ALJ found Plaintiff's "failure to disclose work activity," as well as her

19   inconsistent statements regarding her work history, ability to travel, daily activities, and

20   marijuana use undermined Plaintiff's symptom testimony. *See* AR 24.

21   The ALJ first explained that though Plaintiff testified during the 2020 hearing that she

22   had not engaged in any work activities between 2008 and 2017, the record shows that Plaintiff

23   worked at her family's farm and cleaned houses. AR 23, 101. Plaintiff later explained in the

24

1   2021 hearing that her work in the farm consisted of her sitting down and spraying dirt off

2   vegetables, and her house cleaning involved spending up to four hours once a month to finish her

3   friend's laundry. AR 68–69. But Plaintiff's record nonetheless showed she reported having spent

4   the summer on the farm "picking vegetables" and sharing household chores with her family in

5   2013, and she reported cleaning her friends' house and working as a housekeeper "mostly

6   between Tuesday-Thursday" in 2015, 2016, and 2017. AR 702, 692, 662, 643, 622.

7       The ALJ similarly found Plaintiff's statements regarding her physical capabilities

8   inconsistent with the record. AR 24. Though Plaintiff testified that her work in her friend's office

9   was limited to answering phones and sometimes shredding paper, the record shows Plaintiff

10  worked for five hours, she also cleaned the office, and she was able to perform similar cleaning

11  chores at home. AR 101, 488-90, 533.

12      The ALJ next highlighted that contrary to Plaintiff's statements that she does nothing

13  strenuous while on vacation, Plaintiff testified to snorkeling in a previous trip, and Plaintiff's

14  record shows she had planned a to trip to Las Vegas and the Grand Canyon for "outdoor

15  adventures." AR 24-25, 1582.

16      Finally, the ALJ identified the inconsistencies between Plaintiff's statements regarding

17  her use of marijuana. AR 24. Though Plaintiff testified to using marijuana recreationally

18  monthly, the record shows Plaintiff used marijuana daily. AR 1039, 1050, 1066, 1273-74, 1318.

19  Plaintiff testified in the 2021 hearing that these notes indicating her daily use were most likely

20  due to a "typo" (AR 60-61), but the ALJ pointed out there were several records from different

21  medical sources throughout the relevant period documenting Plaintiff's frequent use of

22  marijuana. *See* AR 1273-74 (Dr. Losee noting in her October 2019 evaluation that Plaintiff

23  occasionally used marijuana candy), 1039 (a treatment note in April 2018 from Mason General

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 16

Hospital stating Plaintiff smokes marijuana daily), 1066 (a treatment note in May 2018 from St. Peter Family Medicine stating Plaintiff smoked marijuana daily for the last seven years), 1050 (Dr. Gibson noting in August 2019 in his evaluation that Plaintiff reports using marijuana daily). Considering these various contradictions, the ALJ reasonably discounted Plaintiff's testimony based on its inconsistency with Plaintiff's own statements.

With regard to ALJ's second reason, "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle*, 533 F.3d at 1161. Here, the ALJ erred in discounting some, but not all, of Plaintiff's statements regarding her symptoms. For example, in discounting Plaintiff's MS symptoms, the ALJ found her symptoms generally stable and controlled with medication, and that Plaintiff's record does not "generally observe the claimant with any disorganization of motor function, gait disturbance." AR 26. Though some of Plaintiff's treatment notes do show that Plaintiff reported no significant side effects from her MS (AR 1285, 1212, 1288, 1295), they also show that she was positive for fatigue, body pain, and poor coordination. AR 1074, 1148, 1648, 1246-47.

Similarly, in discounting Plaintiff's ability to pay attention, concentrate, and persistence, the ALJ cited Dr. Losee's evaluation, where Plaintiff was observed as being able to follow directions, persist, and appeared to consistently give her best efforts. *See* AR 20, 1275. But the overall result of the evaluation also stated Plaintiff's "ability to maintain attention and concentration for extended periods of time is impaired" and her "ability to persist on tasks is affected by cognitive fatigue." AR 1278. Thus, in discounting Plaintiff's statements regarding these symptoms, the ALJ erred.

However, the ALJ did not err in discounting Plaintiff's testimony regarding her COPD, as the cited evidence shows Plaintiff's pulmonary and chest finding were normal, she had no

1  respiratory diseases, no wheezes, and no shortness of breath. AR 26 (citing AR 1212, 1217,

2  1226, 1487). The record also shows that Plaintiff's COPD had not exacerbated, and she had not

3  experienced any recent flares. AR 1489. The ALJ also did not err in discounting Plaintiff's

4  testimony regarding her insomnia because the cited evidence shows Plaintiff was observed to

5  either not having insomnia, or Plaintiff herself reported she has been able to sleep. *See* AR 1419,

6  1542, 1554. The ALJ also did not err in discounting Plaintiff's symptoms regarding her anxiety,

7  as the ALJ cited treatment notes showing Plaintiff as presented as cooperative without "instances

8  of hostile, antisocial, inappropriate behavior in the clinical setting." AR 27. The cited evidence

9  shows Plaintiff was generally cooperative, alert, and oriented. AR 618, 627, 633, 1091, 1097,

10  1266, 1268, 1270. Plaintiff's counseling notes also show she was "doing well," and although her

11  mood was sometimes irritable or anxious, Plaintiff had no psychotic symptoms. AR 1525, 1527,

12  1585. In sum, the ALJ partially erred in discounting Plaintiff's symptoms based on their

13  inconsistencies with the objective medical evidence.

14      With regard to the ALJ's third reason, daily activities "may be grounds for discrediting

15  the claimant's testimony to the extent that they contradict claims of a totally debilitating

16  impairment." *See Molina*, 674 F.3d at 1113. Here, in discounting Plaintiff's testimony regarding

17  her forgetfulness, anxiety, stress with routine changes, and ability to maintain attention,

18  concentrate, and persist, the ALJ cited Plaintiff's ability to work, drive herself and her son, shop,

19  attend to household chores attend her own appointments, and manage her finances. AR 27-28.

20      As previously discussed, the record shows she reported having spent summers on her

21  family's farm "picking vegetables," sharing household chores with her family in 2013, and

22  cleaning her friends' house and working as a housekeeper. AR 622, 626, 643, 662, 692, 702. The

23  record also shows Plaintiff worked for five hours at a friend's company by answering phones and

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 18

cleaning, and she was able to perform similar cleaning chores at home. AR 101, 488-90, 533. The record also shows Plaintiff is able to drive herself and her son and engages in gardening and yard work. AR 1298, 1523, 1562, 1581, 1599. Such activities are valid reasons to discount a claimant's testimony, thus the ALJ did not err. *See Smartt v. Kijakazi*, 53 F.4th 489, 499–500 (9th Cir. 2022) (finding that an ALJ's rejection  of a claimant's testimony based on claimant's ability to perform various chores, including laundry and grocery shopping, "albeit in short increments due to pain," reasonable); *Burch v. Barnhart*, 400 F.3d 676, 680-81 (2005) (finding claimant's ability to care for her own personal needs, cook, clean and shop, interact with her nephew and boyfriend, and manage her own finances and those of her nephew).

In sum, the ALJ erred in discounting portions of Plaintiff's testimony based on their inconsistencies with the objective medical evidence. However, because the ALJ also provided other reasons to do so and those reasons were supported by substantial evidence, the ALJ's erroneous reasons are deemed harmless. *See Carmickle*, 533 F.3d at 1162 (9th Cir. 2008).

### III.    Remedy

Plaintiff requests that this Court remand this case for an award of benefits, or alternatively, for further proceedings. Dkt. 10, p. 18-19.

The Court may remand a case "either for additional evidence and findings or to award benefits." *Smolen*, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).

1       The Court has determined that the ALJ erred in evaluating the medical opinions of Dr.

2   Lazio, Dr. Gibson, and the DDS physicians. On remand, the ALJ shall reevaluate their medical

3   opinions.

4                                    <u>CONCLUSION</u>

5       Based on the foregoing reasons, the Court hereby finds the ALJ erred in concluding

6   Plaintiff was not disabled. Accordingly, Defendant's decision to deny benefits is reversed and

7   this matter is remanded for further proceedings in accordance with the findings contained herein.

8       Dated this 31st day of January, 2023.

9

10                                      David W. Christel
                                         United States Magistrate Judge
11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 20